No. 3514.—JOHN DAVIDSON *v.* EXECUTORS OF WM. SILLIMAN et als.

In this case the executors procured an order from the probate court to sell the property composing the succession of William Silliman solely for account of the succession. At the sale the widow in community was present, and bought more than one-half of the property. Plaintiff bid for a portion of the property, but failing to comply with the terms of his bid, and after being put in default the executors reoffered it for sale at his risk. To this second offering by the executors plaintiff prayed an injunction, on the alleged ground that the executors had failed to give him a title by procuring the signature of the widow to the act of sale, the property being owned in community with her, and only sold as the succession property of her husband, William Silliman, deceased.

Held—That the widow in community being present at the sale, and making no objection thereto, and having purchased a large portion of the property, she was by her own acts, concluded from thereafter making any objection to the validity of the sale, or of setting up any right or title to the property bought by the plaintiff, and that plaintiff was not, therefore, entitled to the injunction claimed on that account. That the widow having participated in the sale, she had ratified the same, and any further ratification was unnecessary on her part. That finally, the sale was valid without her signature to the act.

Held further—That the attorney's fee for dissolving the injunction may be assessed against the plaintiff as damages for wrongfully suing out the same.

APPEAL from the Eighth District Court, parish of Orleans. *Dibble,* J. *J. D. Hill,* for plaintiff and appellee. *Race, Foster & E. T. Merrick,* for defendants and appellants.

HOWELL, J. The plaintiff alleges that at the succession sale of William Silliman, deceased, on the eighteenth December, 1869, he became the purchaser of certain real estate for a price, which, according to the conditions of the sale, was to be paid one-half in cash, the remainder in twelve months in notes secured by mortgage and vendor's lien, eight per cent. interest from date of sale and the clause of five per cent. for attorney's fees; that he was willing to comply with his engagement, and made a formal tender of the price of adjudication and a demand for a compliance with the obligations of the defendants through a notary, but his demand was refused; that the title which was offered to him was defective, because the property sold belongs to the community formerly existing between said William Silliman, deceased, and his surviving widow, but was sold as succession property and without the concurrence of the said widow, and because it is within the limits of the claim recently set up by Mrs. Myra Clark Gaines; that he demanded that the said widow Silliman should sign the act of sale, and that a guarantee against eviction be furnished, which were refused by the executors, who are now proceeding to sell the said property for his account and risk, which, if permitted, will inflict upon him a serious loss and injury; and he prayed that they be injoined from making said sale and compelled to comply with his demands.

The executors answer by a general denial and the averments that under one and the same order, fourteen pieces of property in New Orleans, belonging to the late William Silliman, were sold; ten of which were bought by the widow for $114,500, three by one John E.

15

King for $86,500, and the fourteenth piece by plaintiff, at $18,000; making the total of $219,000, of which the widow purchased more than her half interest therein, which was a ratification of the sale of all the property sold; all of which was well known to the plaintiff, who was frequently urged to comply with the terms of the sale; but he answered that he had not the money to make the cash payment and asked indulgence therefor, until the examination of the titles, which the said King was making through counsel, should be concluded, when he would comply if King did, which plaintiff refused to do, and they caused him to be put in default and proceeded to sell the said property for his account and risk, when, on the day preceding the day of sale, they were injoined. They ask for a dissolution of the injunction and for damages, which they claim in reconvention, averring that the objections of plaintiff are frivolous, vexatious, and made for the sole purpose of delay.

After the case had been pending for over a year, and most of the testimony had been taken, plaintiff, on *ex parte*, motion discontinued so much of his suit as calls for the completion of the title to the property, with guaranty, etc., "leaving this suit purely as an injunction restraining defendants from selling the said property for his account and risk," without prejudice to the reconventional demand. To this the defendants excepted on the ground that the law prohibits a discontinuance of a portion of a suit after a reconventional demand is filed.

From a judgment perpetuating the injunction the defendants have appealed.

We think the discontinuance made by plaintiff of a part of his suit, did not affect or impair defendants' right to recover on their reconventional demand, and it is only in this respect that he is not permitted to dismiss or discontinue his suit. The plaintiff asked that defendants be injoined not to make the sale complained of, and also be compelled to give him a satisfactory title to the property purchased by him. It is this latter demand which he discontinued, leaving his demand for an injunction of the second sale in force; and it is for this injunction the defendants have asked damages in reconvention. If the injunction is maintained, the reconventional demand must be rejected. If it is dissolved the damages, if any, will be such as have been caused by the injunction, and not by a decree on the demand of plaintiff for a good and perfect title to the property. What effect this change in the pleadings will have upon the character and scope of the judgment which must be rendered between the parties, need not be determined here. The general rule is that, "the plaintiff may, in every stage of the suit, previous to judgment being rendered, discontinue the suit on paying costs." C. P. 491. The excep-

tion or limitation is where the exercise of this right will tend to defeat or impair the demand of his antagonist.   See 9 La. 310; 9 R. 240; 3 An. 660.

The question arises:   Has plaintiff shown his right to a perpetual injunction of the second sale?   If the title tendered by the defendants is not a good and legal title to the property purchased by him, he has. The objection that the property is within the limits of a claim set up by Mrs. Gaines, from which eviction may result, seems to be waived. The complaint here is, " that the title offered him is defective, inasmuch as the property sold belongs to the community formerly existing between William Silliman, deceased, and his surviving widow; that the property was sold upon the application of the executors of Wm. Silliman, under an order of the Court of Probates of East Feliciana, solely for account of the succession of the said Silliman, and without the concurrence of his said widow in community;" that it is necessary that the said widow should sign the act of sale tendered to her, but the executors have refused to obtain her signature thereto.   To this the executors reply that the concurrence of the widow in community in the sale of the whole property is amply and conclusively shown by her attendance at the sale, and purchasing more than one-half thereof herself, which forever concludes her and her heirs in law and equity from contesting the validity of the said sale or attempting to disturb the plaintiff in his title or possession; that the *proces verbal* of the sale of all the fourteen stores, including the one to plaintiff, was annexed to and made a part of the first act of sale to Mrs. Margaret A. Silliman, and all subsequent acts of sale to said Mrs. Silliman, to said J. E. King, and the one tendered to the plaintiff, refer to said *proces verbal* as the sale, and to the notarial act as merely in confirmation of said adjudication at public auction on the eighteenth day of December, 1869, by N. J. Hoey, of C. E. Girardey & Co., auctioneers, the *proces verbal* of which is deposited in this office, and annexed to an act of sale to Mrs. Silliman, dated twentieth December, 1869; that all these facts were and are well known to the plaintiff, and constitute as complete a concurrence in and ratification of the sale as if she were to sign the act as demanded by him, and that they can not be required to do a vain thing.

This, to us, seems so plain as scarcely to need demonstration.   In no stronger manner could Mrs. Silliman show her concurrence in the proceedings resulting in the sale.   It is not simply a ratification by her after the sale, but a participation in the sale—a continuing, manifest authorization of the sale, which she can not repudiate.   Blanchard *v.* Allain, 5 An. 367, and authorities there cited.   No such bad faith on her part can be presumed or permitted.   Whether the judgment in this case will be *res judicata* against her as she is not a party to the suit, is not a material question.   The facts of this case show that as

between the plaintiff and the defendants, the executors of William Silliman, deceased, the latter have tendered to the former a perfect and complete title—as to the objection raised—to the piece of property purchased by him at the succession sale on the eighteenth December, 1869, and that he had no reasonable ground to refuse its acceptance. The apprehension that the widow or her heirs might at some future day institute suit against him for the property on the ground set up by him, is shown by the defendants to be without legal foundation.

If it be said that the act of sale or written title must, on its face, be complete and show that the widow has parted with her rights, the reply is, that nothing in the act indicates that she has any right whatever to the property. It is only upon an examination of the records and transactions in relation to the origin and chain of title that it is discovered that the property belonged to the community, and the same examination shows with equal clearness that the widow is concluded from setting up any claim as owner of one-half of this particular property. Her rights, as widow in community, are dependent on a settlement of the community, and the record shows that she has consented to the sale of this property as belonging to the succession of William Silliman, as is enunciated in the *proces verbal,* to which she is a party. The injunction should have been dissolved.

The defendants claim the damages which may be allowed on the dissolution of an injunction where an execution of a judgment is injoined, and quote the laws and authorities on that subject. They do not apply to a case like this. The injunction here is to prevent a sale, not under a judgment against plaintiff, but under a law, which, under certain circumstances, authorizes the sale to be made at his risk, and makes his liability depend on the contingency that the price of the second sale is less than that of the first, and measures the damage to the deficiency in the price and the expenses incurred subsequent to the first sale, for which the first purchaser is the debtor to the vendor. R. C. C. 2611. These can not be ascertained until the second sale is made, and as the pleadings now stand, a dissolution of the injunction permits this second sale to proceed. The attorney's fee in this suit, which is specially claimed, may, however, be allowed.

It is therefore ordered that the judgment appealed from be reversed, and that the injunction herein be dissolved, and that defendants recover of plaintiff on their reconventional demand the sum of one thousand dollars as attorney's fee, without prejudice to their right of action, under article 2611 R. C. C.

Plaintiff and appellee to pay costs in both courts.

WYLY, J., *concurring.* The plaintiff had no right to require Mrs. Silliman to join as covendor in the sale. This was not part of the

*aggregatio mentium*, resulting from the offering and the adjudication. It was not stipulated in the order of sale, in the advertisement and in the offering. The title offered was good and valid, and such only as the purchaser had the right to demand. It is not always necessary for the widow in community to join as vendor in the sale of community property. Where such property is sold to pay debts, or where the widow has renounced the community, it is not necessary. Nor is it necessary in a case like this, where the widow sanctioned and ratified the sale, the *proces verbal* showing that she was the adjudicatee of at least two-thirds of the entire property sold. This ratification was an estoppel as effectual as that resulting from the renunciation of community. The title offered was, therefore, not a mere equitable title; it was a legal title, just as binding on the widow who ratified the sale, as her renunciation of community would be. I therefore concur in this case.